USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/22/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAY LING BRANTMAN,

                                  Plaintiff,

        -against-                                               No. 15-cv-4774 (NSR)
                                                                OPINION & ORDER
FORTISTAR CAPITAL, INC.,

                                  Defendant.

NELSON S. ROMÁN, United States District Judge

        Plaintiff May Ling Brantman ("Plaintiff") initiated this action against Fortistar Capital Inc.

("Defendant" or "Fortistar"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title

VII"), as amended, 42 U.S.C. §§ 2000e *et. seq.*, the Americans with Disabilities Act ("ADA"), 42

U.S.C. §§ 12101 *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Executive

Law §§ 290 *et seq.*  Before the Court is a motion for summary judgment filed by Defendant

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the following reasons,

Defendant's motion is GRANTED.

## BACKGROUND

        The following facts are derived from the parties' respective 56.1 Statements and the record,

and are undisputed unless otherwise indicated.

        Defendant Fortistar is engaged in the business of developing, owning, and operating

electric generating facilities.  (Plaintiff's Statement in Response to Def. 56.1 Statement ("Pl. 56.1

Reply"), ¶ 19, ECF No. 28.)  Plaintiff was employed by Defendant from November 5, 2012 through

January 23, 2013.  (Pl. 56.1 Reply ¶ 8.)  She was hired to perform administrative functions for Mr.

Mark Camora, Owner and President of Fortistar; Ms. Arlene Camora, Fortistar's Vice President

and General Manager of its corporate headquarters; and Ann Zanette, Human Resources Manager.

(Decl. of William Sipser in Opposition to Def. Mot. ("Sipser Decl."), Ex. A, Pl. Dep. Tr. ("Pl. Tr."), at 6:14-15, ECF No. 24; Pl. 56.1 Reply ¶ 9.)  Plaintiff was a new employee, and her first three months were considered an "introductory" or probationary period, at the end of which, her performance would be evaluated to determine whether her employment with Fortistar would continue.  (Pl. 56.1 Reply ¶¶ 8, 16, 18; Declaration of Edward Beane in Support of Defendant's Motion for Summary Judgment ("Beane Decl."), Ex. A, Fortistar Offer Letter Signed by Plaintiff, at 1, ECF No. 18; Sipser Decl., Ex. B, Zanette Dep. Tr. ("Zanette Tr."), at 50:12-13; *see also* Pl. Tr. 34:15-21 (acknowledging terms of introductory period).)  Plaintiff's title was administrative assistant and assistant to the office manager.  (Pl. 56.1 Reply ¶¶ 8.)  Her tasks included functioning as a personal administrative assistant for Mr. Camora, assisting Ms. Zanette with payroll and other functions, and assisting Ms. Camora with her office management functions, with the goal of assuming the role as office manager.  (Pl. 56.1 Reply ¶¶ 10-12.)

On January 16, 2013, Plaintiff was assigned to review and catalogue boxes of files and documents belonging to Defendant's recently retired general counsel, Robert Dunbar.  (Pl. 56.1 Reply ¶¶ 2, 22, 26; Pl. Opposition to Def. Mot. for Summary Judgment ("Pl. Opp."), at 6, ECF No. 22.)  These files had been kept at Dunbar's offsite, home office.  (Pl. 56.1 Reply ¶ 23; Pl. Tr. 65:24-66:3.)  Plaintiff has testified that, while reviewing the materials, she found a DVD in a plastic case with a photographic image of a woman, taken from behind, bent over, exposing her bare backside.  (Pl. 56.1 Reply ¶¶ 50-51.)

Upon discovering the CD, which Plaintiff testified she considered to be sexually explicit, she prompted Ms. Camora with the phrase "look what I found," and showed her the DVD.  (*Id.* ¶ 52; Pl. Tr. 89:15-17.)   According to Plaintiff, Ms. Comora said the DVD belonged to Mr. Dunbar, who no longer worked at Fortistar, and told Plaintiff she could speak with Ms. Zanette about the

DVD "if she wanted" or "liked." (Pl. Tr. 89:24, 94:22.) Plaintiff further testified that she spoke with Ms. Zanette, received no direction, and decided to return the DVD to the box in which she found it. (Pl. 56.1 Reply ¶¶ 59, 61; Pl. Tr. 91-95.) Additionally Plaintiff testified that, although she "did not voice a complaint" to Ms. Camora or Ms. Zanette, she believed her conversations with Ms. Zanette and Ms. Camora constituted complaints. (Pl. Reply ¶ 54; Pl. Tr. 112:8-17.)

Plaintiff also testified that she felt embarrassed and offended (Pl. Tr. 92:21-25), but could not recall articulating these sentiments to Ms. Zanette or Ms. Camora, or describing how she felt. (Pl. Tr. 92:24-93:9) ("Q: When you spoke with Ms. Camora did you use any words to describe how you felt. A: I don't remember using any words to describe how I felt.".) However, Ms. Camora and Ms. Zanette did testify that Plaintiff had described the DVD to them as "pornography" and/or "pornographic," and Ms. Camora testified that Plaintiff appeared "upset." (Sipser Decl., Ex. C, Arlene Camora Dep. Tr. ("Camora Tr."), at 42-46; Zanette Tr. 72:17-18).[1]

Plaintiff was instructed to meet with Mr. Dunbar[2] at Fortistar to discuss her document log, and the documents he believed should be saved or discarded. (Pl. 56.1 Reply ¶ 64; Pl. Tr. 65-66.)[3] Plaintiff did not express discomfort or embarrassment toward meeting with Mr. Dunbar, and she met with him on January 22, 2013.[4] (Pl. 56.1 Reply ¶ 66; Pl. Tr. 109:20-110:8.) This meeting

---

[1] Plaintiff also told a co-worker that she'd found a "pornographic DVD" in the workplace via "G-chat," to which the co-worker responded "but you know what … everybody watches porn, lol." (*See* Pl. Tr. 96:2-19; Beane Decl. Exs. K, L, Transcripts of "G-Chat" Conversations between Plaintiff and Maria Martinez.)

[2] Plaintiff only recalled "meeting" Dunbar on two specific occasions – once apparently in passing when he was walking through corridors of the office, and the other at their meeting on January 22, 2013. At no point during Plaintiff's two-and-a-half-month employment did Mr. Dunbar have any supervisory authority over her, nor was he involved in directing her in the performance of her duties as an employee. (Pl. 56.1 Reply ¶¶ 25; Pl. Tr. 63:14-64:3.)

[3] Although Plaintiff contends that she had not been given any instructions as to what to do with the DVD, and that *after* her meeting with Mr. Dunbar, Ms. Camora asked Plaintiff if she had returned the DVD to him, (Pl. 56.1 Reply ¶¶ 6, 59; Pl. Tr. 105-106), Ms. Camora testified that she had previously told Plaintiff to return the DVD to the box and to forget about it, and that she never told Plaintiff to return the DVD to Dunbar. (Pl. 56.1 Reply ¶ 59; Camora Tr. 44; 104.) Relatedly, there is conflicting testimony as to whether Ms. Zanette told Plaintiff to shred and destroy the DVD. (*Compare* Zanette Tr. 73:22-74:7, *with* Pl. Tr. 93; Pl. 56.1 Reply ¶ 59.)

[4] As previously noted, at the time Plaintiff discovered the DVD, Dunbar was retired. (Pl. Tr. 99:4-6.) Whether or not Dunbar was off-site by this time, Plaintiff did not see him between the time she discovered the DVD and her meeting with him on January 22, 2013. (*Id.* at 99:7-13.)

lasted five to twenty minutes.  (Pl. 56.1 Reply ¶ 67.)  During this meeting there was no mention of the DVD; Plaintiff did not inform Mr. Dunbar that the DVD was in the box, nor did she know at the that time whether the DVD was still in fact in the boxes or removed; Plaintiff did not sort through the boxes with him; and neither she nor Mr. Dunbar removed any contents from the boxes. (*Id*. ¶¶ 68-69; Pl. Tr. 101-103.)  Instead, Mr. Dunbar and Plaintiff reviewed the list Plaintiff had generated of the boxed contents, and marked those he believed should be retained by Fortistar. (Pl. 56.1 Reply ¶ 70.)  Though Plaintiff did check off the items on her list that were flagged by Mr. Dunbar, she did not remove them from the boxes, nor did she ever go through the items in the boxes again.  (*Id*. ¶ 69.)

The following day, approximately one week after Plaintiff had found the DVD and discussed it with Ms. Camora and Ms. Zanette, Ms. Zanette informed Plaintiff of her termination. (Pl. 56.1 Reply ¶ 27.)  Plaintiff has testified that Defendant failed to take any action to remediate or address the DVD.  (Pl. 56.1 Reply ¶ 5.)  In the same vein, Ms. Zanette testified that she did not conduct any investigation into the DVD, document the incident in any report, ask where Plaintiff found the DVD or address it with Mr. Dunbar, and that she did not believe that Plaintiff experienced discrimination when she found the DVD.  (Zanette Tr. 74-77, 80:24-81:7.)

During Plaintiff's two and a half month employment, she was absent from work on unpaid sick leave on three separate occasions, December 3, 2012, January 8, 2013, and January 23, 2013. (Pl. 56.1 Reply ¶ 28.)  Plaintiff's scheduled work hours were 8:30 a.m. through 4:00 p.m.  (Pl. Tr. 56:9-15.) On December 3, 2012, at 7:22 a.m., Plaintiff wrote to Ms. Comora and Ms. Zanette indicating that both she and her daughter were ill, she needed the day off, and she understood it would be unpaid.  (Pl. 56.1 Reply ¶ 30.)  On January 8, 2013, at 7:58 a.m., Plaintiff wrote to the Camoras and Ms. Zanette again, indicating she could not attend work that day as her leg had given

out while she was walking, she had fallen and she could hardly walk; Plaintiff also wrote that her leg muscles had been weak since her injection the previous week, and that she hoped to obtain medication and return to work on the following day. (*Id*. ¶ 33.) On January 23, 2013, at 7:32 a.m., Plaintiff also indicated that she could not report to work that day because she had a shooting pain in her leg which made it difficult to walk. (*Id*. ¶ 34.) Plaintiff was informed of her termination on this day. (*Id*. ¶ 27.)

Plaintiff never provided Fortistar with a physician's letter, report or other medical verification regarding her ailment, (*id*. ¶ 35; Pl. Tr. 78:17-79:2), nor does it appear that Fortistar asked her for any. (Zanette Tr. 172:13-15.) However, Plaintiff did testify that she spoke with the Camoras and Ms. Zanette on "several occasions" about her medical challenges, including her herniated disk and back problems. (*Id*.; Pl. Tr. 77:11-78:16.)[5] Ms. Comora and Ms. Zanette both acknowledged that they were aware Plaintiff experienced pain in her leg and back, and that she needed medication for her ailments, but testified that they were unaware whether she suffered from a "disability" or "medical issue." (Pl. 56.1 Reply ¶ 35; Camora Tr. 50-54; Zanette Tr. 90-91; 95-97.) There are factual disputes surrounding Plaintiff's employment performance, (Pl. 56.1 Reply ¶¶ 36-45; Camora Tr. 67-77, 107:15-23; Zanette Tr. 108-109), but it appears, beyond conversations (*see e.g*., Pl. Tr. 44:14-20), no disciplinary action was taken or recorded prior to her termination (Zanette Tr. 62:15-63:24). As to Plaintiff's attendance record, as previously mentioned, she took three unpaid sick days over the course of her two and a half month employment, and she was a "probationary" or "introductory" employee during this time. (Pl. 56.1 Reply ¶¶ 8, 46.)

---

[5] In Plaintiff's sworn affidavit submitted in support of her Opposition, she attests that in 2012, she was diagnosed with a herniated disc in her lumber spine. (Sipser Decl., Ex. D.) Plaintiff attests that this caused muscle spasms in her lower back and severe sciatic pain down her left leg. (*Id*.) Plaintiff states that she has seen several pain management doctors, a physical therapist, received injections and has undergone surgery, among other efforts to address the pain. (*Id*.)

## STANDARD ON A SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Id.* at 250.

## DISCUSSION

### I.  Plaintiff's Title VII Retaliation Claim

Title VII prohibits an employer from discriminating against any of its employees because of opposition to a practice made unlawful under Title VII.  42 U.S.C. § 2000e–3(a).  The "objective

of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 291–92 (2d Cir. 1998) (citing *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  "To prevail on a retaliation claim, the plaintiff need not prove that her underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful."  *Id*. at 292.

Federal retaliation claims are evaluated under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires, as an initial step, that a plaintiff establish a *prima facie* case of retaliation.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must produce evidence sufficient to permit a reasonable trier of fact to find: 1) that the plaintiff engaged in a protected activity; 2) that the defendant had knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action.  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)) (internal quotation marks omitted).  Once a *prima facie* case has been established a presumption of retaliation arises, and the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.  *Id*. at 845.  Assuming the defendant articulates such a reason, the presumption of retaliation arising from the plaintiff's *prima facie* case dissipates.  *Id*.  At this stage, the plaintiff must then show that the non-retaliatory reason is a mere pretext for retaliation.  *Id.*

Plaintiff asserts that she complained about a "sexually offensive pornographic video" in the workplace, and was retaliated against for making this complaint.  (*See* Pl. Opp. at 16-20.)

Defendant contends that Plaintiff cannot establish that her reporting of the DVD was protected activity, that this alleged protected activity was known to Defendant, or that there was a causal connection between her reporting of the DVD and her termination.  (*See, e.g.*, Def. Mem. at 14-19.)

       a.   Plaintiff's Protected Activity & Defendant's Knowledge of Said Conduct

          i.   Plaintiff's Protected Activity

"An employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied." *McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d Cir. 2001); *see Galdieri—Ambrosini*, 136 F.3d at 292 ("in order for a plaintiff's conduct to qualify as protected activity, she "need not establish that the conduct [s]he opposed was actually a violation of Title VII").  Instead, a plaintiff need only have a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law" to establish this prong of a *prima facie* retaliation case. *Id.* at 283.  However, "mere subjective good faith belief is insufficient, the belief must be reasonable and characterized by *objective* good faith." *Sullivan–Weaver v. New York Power Authority,* 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000).  The reasonableness of a plaintiff's belief that the underlying employment practice was unlawful is "to be evaluated from the perspective of a reasonable, similarly situated person," *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 16–17 (2d Cir. 2013), and assessed considering the totality of the circumstances, *see Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 228 (E.D.N.Y. 2010) ("Whether [plaintiff's] belief was 'objectively reasonable,' and not merely subjective, is determined based on the facts and the record presented.").  *See also Semmler v. Cty. of Monroe*, 35 F. Supp. 3d 379, 384 (W.D.N.Y. 2014) ("[a] plaintiff's belief on this point is not reasonable

simply because he or she complains of something that appears to be discrimination in some form.")
(internal quotation marks and citations omitted).

At her deposition, Plaintiff testified that her sex discrimination claim was based only upon
her discovery of the DVD at issue, which she believed to be "gender offensive."   (*See* Pl. Tr.
76:12-77:6 ("Q: ….Why do you claim you were discriminated against because of your sex? A: I
found a pornographic DVD that was gender offensive. Q: Other than that incident, is there anything
else that you claim constitutes discrimination based on your sex? A: Not that I know of … Q: …
As you sit here and look at this charge now, other than [the discovery of the DVD] … is there any
other basis for your claim based on sex? A: No."); Pl. Tr. 80:20-24 ("Q: And it is the DVD that
forms the basis of your charge of sex discrimination? A: Yes Q: And retaliation? A: Yes.")  Thus,
the Court must determine, based on the record, whether it was reasonable for Plaintiff to believe
that finding the DVD at Fortistar subjected her to sex discrimination, such that her comments to
Ms. Zanette and Ms. Camora about the DVD could be considered protected activity precipitating
her alleged unlawful retaliatory termination.   *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178
(2d Cir. 1996).

Generally, both within and outside of this Circuit, as to allegations of sex discrimination,
courts have found it unreasonable for an individual to believe that a single, isolated incident could
constitute a Title VII violation.  *See Greene v. A. Duie Pyle, Inc.*, 170 F. App'x 853, 856 (4th Cir.
2006) (granting defendant summary judgment on retaliation claim after plaintiff terminated
subsequent to reporting "Penthouse," "Playboy" and other "sexually offensive" material
throughout workplace on the basis that "[plaintiff's] testimony boil[ed] down to *a few observations
of lewd magazines and inappropriate jokes or drawings* over a seven-month period of employment
… [and] *based on this handful of observations*, [plaintiff] did not have an objectively reasonable

belief that [defendant's] actions were unlawful.") (emphasis added); *Abeln v. Ultra Life Batteries*, 07-CV-6113, 2009 WL 857497, at *2 (W.D.N.Y. Mar. 30, 2009) ("courts exploring the issue of protected activity have consistently concluded that a single, isolated inappropriate comment is generally insufficient to engender a reasonable belief that a Title VII violation has occurred … Federal courts are not designed to be arbiters of good taste. More is required."); *Khan v. Hip Centralized Lab. Servs., Inc.*, 03-CV-2411 (DGT), 2008 WL 4283348, at *2 (E.D.N.Y. Sept. 17, 2008) (it is "likely true" that one cannot have a good faith reasonable belief that conduct violates Title VII "where the objectionable comment is an isolated or passing incident."); *Reed*, 95 F.3d at 1179 (noting female employee's complaint about one sexist comment by a coworker "would not have passed the 'good faith reasonableness test'" absent evidence of additional demeaning treatment toward plaintiff); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting, in a work place harassment case, "*[plaintiff] must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] ... because of ... sex.*") (internal quotation marks omitted); *Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 619 (2d Cir. 2009) (summary order) (affirming grant of summary judgment on retaliation claim where plaintiff complained supervisor had kissed her because "*no reasonable person could have believed that a single incident of sexually inappropriate behavior by a co-worker could amount to*" *a Title VII claim*) (internal citations and quotation marks omitted) (emphasis added); *Semmler v. Cty. of Monroe*, 35 F. Supp. 3d 379, 385 (W.D.N.Y. 2014) ("No reasonable person could have believed that …[there was a] violat[ion] [of] Title VII's prohibition on gender-based discrimination … [where] [t]he only incident claimed by [p]laintiff that arguably ha[d] a sex-based component [was a co-worker] allegedly calling Plaintiff a bitch.

No reasonable person could have believed that this *single incident of sexually inappropriate language* by a co-worker constituted unlawful sexual harassment.") (emphasis added).

Though Plaintiff chose not to pursue her separate cause of action for sex discrimination in order to focus on her claim that she was *retaliated against* for reporting said discrimination,[6] the Court notes that it was fashioned at least in part as a claim of hostile work environment, (*see* Compl. ¶ 30), and that the notion articulated above also prevails in retaliation cases premised upon hostile work environment claims. *See Denigro v. Mary Imogene Bassett Hosp.*, 15-CV-0746 (BKS) (TWD), 2016 WL 6652777, at *3 (N.D.N.Y. Sept. 9, 2016) ("Even drawing all inferences in Plaintiff's favor and assuming that his supervisor made the remark to him because of his gender …[making] him 'uncomfortable' and 'upset' … no reasonable person could have believed that Plaintiff's supervisor's *single sexually demeaning remark* (and hand gesture) was unlawful under Title VII … Indeed, Plaintiff alleges no other facts or circumstances from which an inference could be drawn that his supervisor's conduct, while sexually offensive, was anything other than an *isolated incident* … [As such, Plaintiff] fails to state a retaliation claim") (internal quotation marks omitted) (emphasis added); *Dottolo v. Byrne Dairy, Inc.*, 08-CV-0390 (GTS) (ATB), 2010 WL 2560551, at *7 (N.D.N.Y. June 22, 2010) (dismissing retaliation claim on the basis that "that it was *[not] objectively reasonable for Plaintiff to believe that Title VII had been violated* … [*where*], even accepting the allegations of Plaintiff's Complaint as true, at most th[e] [Complaint allege[d]

---

[6] Plaintiff chose not to address Defendant's arguments as to her sex discrimination claims. (*See* Pl. Opp. at 16, n.3) ("*While Plaintiff did make a claim of sex discrimination in her complaint*, for the purpose of this motion *she is not pressing that claim, as the gravamen of the case* concerning that issue *pertains to the retaliatory act taken* by Defendant in response to her complaints about sexually discriminatory pornographic materials in the workplace.") (emphasis added). Plaintiff's choice is deemed purposeful and these claims are considered abandoned. *105 Mt. Kisco Assocs. LLC v. Carozza*, 15-CV-5346 (NSR), 2017 WL 1194700, at *10 (S.D.N.Y. Mar. 30, 2017) (citing *Tuman v. VL GEM LLC*, 15-CV-7801 (NSR), 2017 WL 781486, at *7-8 (S.D.N.Y. Feb. 27, 2017)) (citing *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 618 (S.D.N.Y. 2015) ("abandonment constitutes an[] independent ground for dismissal")).

that *Plaintiff was subjected to only one sexually explicit comment,* made by his supervisor") (emphasis added); *see also Williams v. CSX Transp. Co*., 533 F. App'x 637, 642, 643 (6th Cir. 2013) (collecting cases supporting the conclusion that "the *mere presence of visible pornography in the workplace, [even] combined with a single confrontation involving sexist remarks ... fail[s]* to create a genuine dispute of material fact as to whether there was an objectively sexually hostile environment") (emphasis added); *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (plaintiff's regular observation of supervisor watching pornographic videos, discovery of "hard core" pornographic websites that he viewed on her computer, and "regular[] require[ment]" that she handle pornographic material in opening supervisor's mail, combined with other inappropriate behavior, were relevant to assess whether work environment was objectively hostile to women).

The undisputed evidence indicates that Plaintiff's retaliation claim is premised upon the allegation that she was terminated for reporting her discovery of a DVD with the image of a women's bare backside (Pl. Tr. 87:20-24), which she discovered when tasked with reviewing the belongings of a retired employee, Mr. Dunbar.  (*See supra*, at 2-4.)  By this time, Dunbar was either no longer at the office or Plaintiff had not seen him; and there is no indication that: the DVD was intended for Plaintiff, meant to harass or offend her; that Dunbar knew Plaintiff would be assigned to review the items; or that he purposely included it in the items sent to Fortistar.  (*Id*.) Furthermore, after her initial discovery of the DVD, Plaintiff was unaware whether the DVD remained in the boxes, was not required to handle the items when she met with Dunbar; and never discussed the DVD with him.  (*Id*.)

Even drawing all inferences in Plaintiff's favor and assuming that discovering the DVD "embarrassed" and "offended" her (Pl. Tr. 92:24-25), the record establishes that no reasonable person could have believed that this single incident was gender discriminatory in violation of Title

VII.  Even considering that Plaintiff was required to meet with Dunbar, given the jurisprudence on this point and the undisputed facts surrounding that meeting, the Court's conclusion remains the same.  Plaintiff's complaints to Ms. Camora and Ms. Zanette were thus not based upon a good faith, reasonable believe that Title VII had been violated, and cannot constitute protected activity.  As such, Plaintiff has not presented a *prima facie* case of retaliation, and Defendant is entitled to judgement in its favor on Plaintiff's retaliation claim.

### ii.  Defendant's Knowledge of Plaintiff's Alleged Protected Activity

Even if Plaintiff were able to establish that her complaints were based upon a good faith, reasonable belief that Title VII had been violated, her retaliation claim would still fail, because she is also unable to meet the second prong of a *prima facie* retaliation claim, described *supra* at 7, that Defendant had knowledge that she was reporting activity prohibited by Title VII.

Assuming a plaintiff has satisfied the first prong of a *prima facie* retaliation claim, she need only make "informal protests of discrimination, including … complaints to management" for this report to constitute participation in a protected activity.  *Gregory v. Daly*, 243 F.3d 687, 700-01 (2d Cir. 2001).  However, as to an employer's knowledge of a Title VII plaintiff's complaint, "implicit in the requirement that the employer [be] aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  *Galdieri-Ambrosini*, 136 F.3d at 292.  "Mere complaints of unfair treatment … are not protected speech under Title VII."  *McNutt v. Nasca*, 10-CV-1301 (MAD) (RFT), 2013 WL 209469, at *16 (N.D.N.Y. Jan. 17, 2013).

As such, "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally."  *Id*. (emphasis added); *see Kelly*, 716 F.3d at 17 (affirming judgment

against Title VII plaintiff where she "made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise [and] … [n]othing in her behavior … would have allowed her employer to reasonably have understood … that [plaintiff's] opposition was directed at conduct prohibited by Title VII"); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727–28 (7th Cir. 2003) ("[a]lthough an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, [plaintiff] has to at least say something to indicate her gender is an issue. An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints") (internal citations and quotation marks omitted); *see also Brummell v. Webster Cent. Sch. Dist.*, 06–CV–6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009) (finding complaints about being treated differently, not clearly attributed to gender, do not qualify as protected reporting, and noting "[t]he plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by Title VII."); *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("the onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to h[er] membership in a protected class").

According to Plaintiff's testimony, her complaint to Ms. Camora consisted of her comment, "look what I found," and her display of the DVD.  (Pl. Tr. 96:13-24).  Ms. Camora responded that Mr. Dunbar was no longer employed at Fortistar, and told her she could speak with Ms. Zanette "if she wanted."  (*Id.*)  This conversation lasted a few minutes.  (*Id.* at 94:9-16.)  Plaintiff then showed Ms. Zanette the DVD and told her that she had found it in Mr. Dunbar's boxes; according

to Plaintiff, Ms. Zanette also responded that Mr. Dunbar was no longer at Fortistar. (*Id.* at 93:10-18.) Although Ms. Camora did note Plaintiff appeared "upset," Plaintiff admits that she did not verbally express that the DVD made her feel uncomfortable or offended, or any sentiment to the effect that she felt she was being discriminated against, nor did she provide any verbal articulation with regard to how the DVD made her feel, *see supra* at 3. As such, though it may have been clear she found the DVD indecorous and perhaps upsetting, even when construed in the light most favorable to Plaintiff, the content of her complaints do not raise a genuine issue of fact as to whether she put Defendant on notice that she felt she was facing or opposing discrimination *on the basis of her sex*, as proscribed by Title VII.

As no evidence in the record supports a finding that Plaintiff made any complaint of sex discrimination, Ms. Camora and Ms. Zanette could not have understood that she was opposing activity allegedly unlawful under Title VII, and engaging in protected activity when she spoke with them about the DVD. For this reason, Plaintiff also fails on this ground to present a *prima facie* case of retaliation for the exercise of protected speech. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim. The analogous claims brought under NYSHRL are dismissed without prejudice as indicated below, *see infra* at 24, so that they may be pursued in state court.

## II.   Plaintiff's Claims Pursuant to the ADA

### a.   Discrimination

The ADA proscribes discrimination against "qualified individual[s] on the basis of disability" with regard to "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff's ADA claims are subject to the same *McDonell Douglas* burden-shifting framework as her Title VII claim discussed *supra*, at 7. *Wagner v. Cty. of Nassau*, 11-CV-1613 (JS) (ARL), 2014 WL 3489747, at *4 (E.D.N.Y. July 11, 2014). As noted in the Title VII

discussion above, under this framework, a plaintiff must establish a *prima facie* case of disability discrimination; after which the burden shifts to the employer to offer, through the introduction of admissible evidence, a legitimate non-discriminatory reason for the discharge.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Assuming the employer is able to provide such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Dorgan v. Suffolk Cty. Cmty. Coll.*, 12-CV-0330 (SJF) (ARL), 2014 WL 3858395, at *6 (E.D.N.Y. Aug. 4, 2014) (citing *Patterson v. Cnty. of Oneida, N. Y.*, 375 F.3d 206, 221 (2d Cir. 2004)).

To establish a *prima facie* case of disability discrimination, "a plaintiff must show by a preponderance of the evidence that: '(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of his disability.'"  *Sista*, 445 F.3d at 169 (citing *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).  In seeking summary judgment on Plaintiff's disability discrimination claim, Defendant argues that Plaintiff fails to establish a *prima facie* case of disability discrimination, and that Defendant had legitimate, non-discriminatory and non-retaliatory reasons for terminating Plaintiff's employment.  (*See* Def. Mem. at 19-24.)

1. Disability as Defined Under the ADA[7]

To establish a *prima facie* case of disability discrimination Plaintiff must show she is disabled as defined by the ADA.  Under the ADA, "disability" is defined as: "(A) a physical or

---

[7] Under the NYSHRL the term "disability" is more broadly defined as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques ...."  N.Y. Exec. Law § 292(21).

mental impairment that substantially limits one or more of the major life activities of [an] individual; B) a record of such an impairment; or C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). It appears that Plaintiff attempts to establish her disability primarily under prong (A), with passing reference to prong (C).[8] (*See* Pl. Opp. at 21-23.)

Plaintiff contends that in late 2012 she was diagnosed with a herniated disk in her lumbar spine which caused muscles spasms in her lower back, and sciatic pain down her left leg. (*See* Pl. Opp. at 22) (citing Sipser Decl., Ex. D, Affidavit of May Ling Brantman.) Plaintiff argues that this substantially limited her ability to stand, walk or sit for long periods of time. (*Id.*) In support of this contention, Plaintiff offers her own affidavit and deposition testimony, and a report, dated July 8, 2014, from an MRI which is unaccompanied by an affidavit and appears to reflect in relevant part, "moderate … disc herniation." (*See* Pl. Opp. at 22 n.14.)[9] Yet, the Court need not

---

[8] Plaintiff briefly argues that she was "regarded as disabled," presumably invoking prong C of the ADA disability definition. (*See* Pl. Opp. at 22.) "The 'regarded as disabled' provision of the ADA is intended to benefit only those employees *erroneously* perceived to be disabled, and who are in fact fully able to perform the essential functions of that job." *Nelson v. City of N.Y.*, 11-CV-2732 (JPO), 2013 WL 4437224, at *8 (S.D.N.Y. Aug. 19, 2013)) (internal quotation marks and citations omitted). It follows then, that, "an individual [who is] 'regarded as' disabled is not entitled to a reasonable accommodation." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 266–67 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015). As such, even if Plaintiff had established that she could be considered disabled under the alternative "regarded as" theory, she would need to establish that she could also be considered qualified to perform the essential functions of her position at Fortistar without a reasonable accommodation, as required by the third prong of a *prima facie* ADA case. Yet, Plaintiff does not argue that she could have performed the essential functions of her job at Fortistar *without* an accommodation. (*See* Pl. Opp. at 22-23.) Instead, she argues only that, *with* a reasonable accommodation of time off she would have performed adequately, and in fact, contends that this is a reasonable accommodation case. (*See* Pl. Opp. at 23, n.16.)

[9] Defendant presents a slew of caselaw from this Circuit to support the contention that personal testimony as to the effect of one's impairment on a major life activity, without supporting medical evidence, is insufficient to establish a *prima facie* ADA case, or to raise an issue of fact as to whether a claimed impairment substantially limits a major life activity. (*See* Def. Reply at 7-8.) However, in *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 47 (2d Cir. 2015) the Second Circuit explained that medical evidence is not "always required for a plaintiff to survive summary judgment." *See also Mazzocchi v. Windsor Owners Corp.*, 204 F. Supp. 3d 583, 609 (S.D.N.Y. 2016) ("non-medical evidence that conveys, in detail, the substantially limiting nature of an impairment may be sufficient to survive summary judgment."). That said, although medical evidence may not always be necessary "*to establish that an impairment substantially limits major life activities*, [the Second Circuit] has not ruled on whether such evidence is necessary *to establish the existence of an impairment in the first instance*." *Mazzocchi*, 204 F. Supp. 3d at 610 (emphasis added). Defendant also takes issue with Plaintiff's submission of the July 2014 MRI scan report, arguing that it is hearsay unsupported by a physician's affidavit. The Court notes that the Second Circuit has also indicated that, as to medical records, "the authentication requirement can be satisfied by "[t]he appearance, contents, substance, ... or other distinctive characteristics of the item, taken together with all the circumstances." *Rodriguez*, 788 F.3d at

determine whether Plaintiff's ailment qualifies as a "disability" under the ADA, because, as will be discussed, even assuming, *arguendo*, that Plaintiff is disabled, Plaintiff fails to otherwise establish a *prima facie* case of ADA discrimination. *Dorgan*, 2014 WL 3858395, at *6.

    2.   Whether Plaintiff is "Otherwise Qualified" to Perform Essential Job Functions

As discussed *supra*, at 16, the third prong of a *prima facie* ADA discrimination case requires that Plaintiff show that she was otherwise qualified to perform the essential functions of her job, in this case, with a reasonable accommodation.  Defendant argues that Plaintiff cannot meet her burden of proving that she could perform an essential function of her role – namely, predictable attendance – with or without a reasonable accommodation.  (*See, e.g.*, Def. Mem. at 21.)

"An employer may be liable under the ADA where it fails to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'"  *Carey v. Cty. of Albany*, 114-CV-420 (GLS) (CFH), 2016 WL 4098598, at *3 (N.D.N.Y. July 28, 2016) (citing 42 U.S.C. § 12112(b)(5)(A)).   "While a reasonable accommodation may include adjustments such as the modification of … work schedules or equipment or job restructuring, reasonable accommodation does not mean the elimination of any of the position's essential functions."  *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 261 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015).

"'[T]he identification of the essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.'"

---

46 (citing Fed.R.Evid. 901(b)(4)).  The Court need not rule on these arguments because Plaintiff fails to meet her burden for other reasons.

*Carey*, 2016 WL 4098598, at *3 (quoting *Fowler v. Kohl's Dep't Stores, Inc.*, 07-CV-1197, 2009 WL 2155481, at *5).  "'Under guidelines accompanying EEOC regulations enacted pursuant to the ADA, courts are instructed to first determine 'whether the employer actually require[d] employees in the position to perform the functions that the employer asserts are essential.'"  *Id.* (quoting *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 101 (2d Cir. 2003) (quoting 29 C.F.R. § 1630.2(n))).  "[C]ourt[s] must give considerable deference to an employer's judgment regarding what functions are essential."  *Id.* (quoting *Rodal v. Anesthesia Grp of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004)) (internal quotation marks and citations omitted).  To this end, evidence of whether a particular function is essential includes the employer's judgement as to the importance of the function, and written job descriptions prepared prior to the pendant litigation.  *See Hernandez*, 100 F. Supp. 3d at 261.  Ultimately, though, "the question whether a task constitutes an essential function depends on the totality of the circumstances."  *Carey*, 2016 WL 4098598, at *4 (internal quotation marks and citations omitted).

Generally, it is an accepted tenet that, "some degree of regular, predictable attendance is fundamental to most jobs and an employee who cannot get to work does not satisfy the essential requirements of her employment."  *Aquinas v. Fed. Exp. Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) (citing *Misek–Falkoff v. IBM Corp.,* 854 F.Supp. 215, 227 (S.D.N.Y.1994), *aff'd*, 60 F.3d 811 (2d Cir.), *cert. denied*, 516 U.S. 991 (1995), 517 U.S. 1111 (1996); and *Kotlowski v. Eastman Kodak Co.*, 922 F. Supp. 790, 796 (W.D.N.Y.1996)).  As to Plaintiff's former role, the record indicates that being present at work, and arriving at a particular hour, were essential functions of the job.  Fortistar's Employee Handbook, dated August 2008, contains a section entitled "Rules of Conduct."  (Beane Decl. Ex. M, at 18).  Within this section is a subsection entitled "Attendance, Punctuality and Dependability," which states in relevant part:

> Fortistar depends heavily on its employees and it is therefore
> important that employees attend work as scheduled. Dependability,
> attendance, punctuality, and a commitment to do the job right are
> essential at all times. As such, employees are expected to work on
> all scheduled work days and during all scheduled work hours and to
> report to work on time … Three incidences of absence in a six (6)
> month period or five incidences in a year are considered excessive
> …. [F]requent absences will result in disciplinary action, up to and
> including termination.

Plaintiff signed an Employee Handbook Acknowledgement Form on October 23, 2012 and January 4, 2013.[10]  Plaintiff also testified that her specific employment hours were 8:30 a.m. to 4:30 p.m.  (*See* Pl. Tr. at 56:9-11.)  She further testified that, in her position at Fortistar, she did not "have the capability to work from home" and there was "no way [she] could complete [her] tasks if [she] wasn't in the office."  (Beane Reply Decl., Ex. A, Pl.'s Tr., 126:12-19.)  Furthermore, Plaintiff had to perform various administrative tasks throughout the day, including preparing for and setting up conference rooms for meetings, some of which occurred in the early morning.  (*See, e.g.*, Pl. Tr. 72:21-74:2; Camora Tr. 34:15-35:17).  Additionally, Plaintiff was the only person that worked in at least one of her roles.  (*See* Pl. Tr. 54:11-13) ("Q: Was there any other administrative assistant that worked directly for [Mr. Camora]? A: No.")  Thus, the record indicates that predictable arrival and attendance were essential functions of Plaintiff's job.

The record also establishes that Plaintiff was not able to perform the aforementioned essential functions with or without her requested reasonable accommodation.  Plaintiff contends that she could have performed these functions if she had been provided with a reasonable accommodation.  (*See* Pl. Opp. at 23.)  The accommodation Plaintiff contends she requested was "not to be able to come to work and stay at home to deal with the pain … when[ever] [she] was

---

[10] Defendant has provided three separate Acknowledgement Forms, two dated October 23, 2012, and one dated January 4, 2013.  Defense Counsel Beane's Declaration indicates that these forms correspond with the "general," "site specific," and "general and site specific" handbooks respectively.  (*See* Beane Decl. ¶¶ 26, 27.)

going through an acute episode of pain."  (Pl. Tr. 115:24-116:4; *see id*. 115:8-11 ("Q: Did you ask

Ms. Camora for any specific actions that Fortistar could take to alleviate it or make it better or

accommodate you? A: Other than my sick days, no); 84:6-15 ("Q: Did you ask for a change in the

number of hours that you worked on the schedule that you worked to accommodate this herniated

disk condition? A: Not that I remember. Q: Did you ask for any accommodation with respect to

any pieces of equipment in your office or to change your functions to accommodate this …

condition? A: No); 85:9-15 ("Q: … did you at any time say this is going to happen from time to

time and whenever it does I need to take a sick day; did you ever say that? A: I don't remember

saying that.)  Specifically, Plaintiff points to three emails she sent to Ms. Camora on December 3,

2012, January 8, 2013, and January 23, 2013, indicating she could not report to work due to pain

in her leg, and sickness.   Plaintiff argues that each of these emails was a request for reasonable

accommodations.  (Pl. Opp. at 23; Pl. Tr. 79:8-14.)  These emails were sent on 7:22 a.m., 7:58

a.m. and 7:32 a.m. respectively, on the mornings of the days she was requesting to be absent.  (*See*

Beane Decl. Exs. H, I, J.)

Plaintiff bears the burden of proving that a reasonable accommodation exists that would

permit her to perform the essential functions of the job in question.  *Palmieri v. City of Hartford*,

947 F. Supp. 2d 187, 205 (D. Conn. 2013).  Such an accommodation cannot involve the elimination

of an essential job function.  *Id*. at 203.  The proposed reasonable accommodation that Plaintiff

offers is essentially to attend work when her ailment allows her to, and to be absent on an

intermittent basis, with little notice, otherwise.  However, this form of accommodation has been

found to be patently unreasonable where attendance is an essential function of the job in question,

as it is here.  *See Lewis v. N.Y. City Police Dep't*, 908 F. Supp. 2d 313, 327 (E.D.N.Y. 2012), *aff'd*,

537 F. App'x 11 (2d Cir. 2013) (citing *Aquinas v. Fed. Exp. Corp.,* 940 F.Supp. 73, 79 (1996))

(finding that plaintiff's proposed reasonable accommodation "amounts to a request for permission to work only when her illness permits," and that this request "necessarily undermines the policy of regular attendance that is essential to her job."); *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1240 (9th Cir. 2012) ("An accommodation that would allow [a plaintiff] to simply ... miss work whenever she felt she needed to and apparently for so long as she felt she needed to [a]s a matter of law ... [is] not reasonable on its face."); *Reddick v. Niagara Mohawk Power Co.*, 08-CV-0995 (NPM) (ATB), 2010 WL 5185098, at *8 (N.D.N.Y. Dec. 16, 2010) (internal quotation marks and citations omitted) ("[when an employee's] absences are so sporadic that the employer has no way of knowing .... if their employee will be reporting to work, [a] court may hold, without the need for a trial, that a requested leave of absence is an unreasonable request for accommodation."); *id.* at *6 ("While a leave of absence may constitute a reasonable accommodation, a request for leave may be unreasonable as a matter of law where the absences are so sporadic that the employer has no way of knowing, from one day to the next, if their employee will even be reporting to work....") (internal citations and quotation marks omitted); *see also McMillan v. City of N.Y.*, 711 F.3d 120, 123 (2d Cir. 2013) ("In many, if not most, employment contexts, a timely arrival is an essential function of the position, and a plaintiff's inability to arrive on time would result in his failure to establish a fundamental element of a *prima facie* case of employment discrimination.").

Given Plaintiff's failure to identify a reasonable accommodation that would allow her to achieve predictable attendance at work, she has not demonstrated that she is "otherwise qualified" to perform the essential functions of her former role, with or without reasonable accommodation. *See Vandenbroek v. PSEG Power, CT LLC*, 365 F. App'x 457, 459–60 (2d Cir. 2009) (plaintiff was not able to show that he was "otherwise qualified" because "reliable attendance at shifts was

an essential function" of his job); *Doe v. Major Model Mgmt. Inc.*, 11-CV-6182 (KBF), 2012 WL 763556, at *8 (S.D.N.Y. Mar. 9, 2012) (erratic absenteeism is sufficient to find that plaintiff is unable to perform the essential functions of her job); *Aquinas*, 940 F. Supp. at 78 ("[A] disabled employee who cannot get to work as often as her employer requires is not 'otherwise qualified' for her job under the ADA, and her employer is not required to make allowances for her absenteeism."); *see also Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994), *cert. denied*, 513 U.S. 1052 (1994) (finding unpredictable and sporadic *absences during probationary period of employment indicated that employee could not fulfill an essential function of his employment – presence on the job – that no reasonable accommodation could be made* to cure the unpredictable nature of the absences, "[r]equiring the [employer] to accommodate such absences would place upon the [employer] the burden of making last-minute provisions for [plaintiff's] work to be done by someone else" *and thus, summary judgment in favor of employer was appropriate*) (emphasis added).   Because Plaintiff has failed to present a *prima facie* case of discrimination under the ADA, Defendant is entitled to summary judgment on Plaintiff's ADA claims.   The analogous claims brought under NYSHRL are dismissed without prejudice, as indicated below, *see infra*, at 24, so that they may be pursued in state court.

   b.   Failure to Accommodate

   Plaintiff appears to set forth a very brief "failure to accommodate" argument in her discussion of the third prong of a *prima facie* discrimination case, discussed in the section immediately prior.   To establish a *prima facie* failure to accommodate claim, a plaintiff must demonstrate that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) *with reasonable accommodation, plaintiff could perform the essential functions of the job at issue*; and (4) the

employer has refused to make such accommodations."  Whether Plaintiff's ADA claims are premised upon a failure to provide a reasonable accommodation, or discrimination due to an alleged disability, as noted above, Plaintiff has failed to satisfy the third prong of her *prima facie* case.  For the same reasons articulated above, Plaintiff's reasonable accommodation claim also fails, and the Court need not go any further in its analysis.

## III.   NYSHRL Claims

"In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 148 (E.D.N.Y. 2015) (quoting *Birch v. Pioneer Credit Recovery, Inc.*, 06–CV–6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007); *see Hernandez*, 100 F. Supp. 3d at 256 ("[B]ecause the law of New York in regard to relative state and federal disability claim analysis is still developing," the Court of Appeals for the Second Circuit has recommended that where there is an "absence of any continuing basis for federal question jurisdiction [under the ADA]," "the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York.") (citing *Brief v. Albert Einstein Coll. of Med.,* 423 F. App'x 88, 93 (2d Cir. 2011)).  Because, as discussed, the federal claims against Defendant do not survive summary judgment, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over any state law claims. *Id.* (citing 28 U.S.C. § 1367(c)(3) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Plaintiff's claims under the NYSHRL are dismissed without prejudice in accordance with this opinion so that they may be pursued in state court. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 17 and 27. The Clerk of Court is also directed to enter judgment in favor of Defendant, and to close the case.

Dated:   July 21, 2017
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge